UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

Case No. 2:17-cr-20640

v.

HONORABLE STEPHEN J. MURPHY, III

D-1, JVON CLEMENTS,
D-2, WINSTON HILL,
D-4, RON BENSON,
D-6, DESHAUN TISDALE,
D-7, DAVON MOULTRIE,
D-8, DEONDRE CASEY,
D-10, DANGELO DAVIS,
D-13, NATHANIEL BROWN,
D-14, DARRYL GRIZZARD,

Defendants.

________________________________/

**OPINION AND ORDER RESOLVING DEFENDANTS' MOTIONS**

The Government has charged 14 defendants with criminal activity arising from their alleged membership in the Playboy Gangster Crips gang. According to the indictment, the gang deals in drugs and weapons, leading to carjackings, murders, and other violent crimes. Motion practice has been heavy in the case and several motions are now pending before the Court.

I. Motion to Sever [234]

Not every one of the 14 Defendants is charged in every count of the indictment, but Count One implicates them all in a RICO conspiracy. Nevertheless, several of the defendants move to have their cases severed from the others.[1]

The criminal rules permit the joinder of defendants, and also give courts options if it appears that trying defendants together will prejudice them or the government. Rule 8(b) allows an indictment to charge multiple defendants if they allegedly "participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Rule 14, in contrast, authorizes a court to "order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). Even so, the Sixth Circuit has recognized a preference for joint trial of defendants who are indicted together, particularly when a charge against all the defendants may be proved by the same evidence and results from the same series of acts. *United States v. Walls*, 293 F.3d 959, 966 (6th Cir. 2002) (citing *Zafiro v. United States*, 506 U.S. 534, 539 (1993)); *United States v. Hamilton*, 689 F.2d 1262, 1275 (6th Cir. 1982) (citing *United States v. Cohen*, 124 F.2d 164, 165 (2d Cir. 1941)). Severance is therefore required "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

The movant Defendants broadly contend that the overt acts they are charged with "arise separately from the alleged RICO violations" and "are not linked to any other overt

[1] Defendant Dangelo Davis initially filed the motion. ECF 234. Nathaniel Brown, Darryl Grizzard, Winston Hill, and Deondre Casey later filed joinders. ECF 236, 237, 250, 292.

acts[.]" ECF 234, PgID 1126. They conclude they are misjoined to the other Defendants and, further, that they will be prejudiced if they are tried with the other Defendants because jurors will hear evidence against the other defendants and paint them all with the same brush. *Id.* at 1127.

The argument fails. The indictment thoroughly explains the nature of the alleged conspiracy, who its members were, where and how they operated, and many of the crimes they allegedly committed in furtherance of the conspiracy. Davis, who filed the initial motion, is specifically implicated in three overt acts: stealing a car with co-Defendant Dawon Taylor in June 2015, burglarizing a house in January 2017, and finally shooting someone during another burglary a few weeks later, this time with another co-defendant, Deshaun Tisdale. *See* ECF 160, PgID 426, 429. These overt acts are consistent with the overarching conspiracy alleged by the Government. Accordingly, joinder is proper, *see United States v. Warner*, 690 F.2d 545, 551 (6th Cir. 1982), and none of the movant Defendants have provided any concrete reason that they will be prejudiced by it. The motion will be denied.

II. Motion to Strike Allegations [238]

The RICO count alleges 72 overt acts. ECF 160, PgID 421–31. Five of the Defendants move[2] to strike some of these allegations. They argue that they were

[2] As with other motions, one defendant (Deondre Casey) made the initial motion. ECF 238. Nathaniel Brown, Darryl Grizzard, Deshaun Tisdale, and Jvon Clements subsequently filed joinders. ECF 239, 243, 255, 262.

previously convicted in state court for some of the overt acts and so indicting them for the same acts would run afoul of the Fifth Amendment's prohibition against double jeopardy.[3]

There are several reasons to reject Defendants' argument, but Defendants concede the most important reason in their brief. They admit, accurately, that the Supreme Court has long embraced a "dual sovereignty" understanding of the double jeopardy clause. Under that understanding, a second prosecution for "identical criminal conduct through equivalent criminal laws" does not violate the double jeopardy clause if the prosecutions are brought by different sovereigns. *Puerto Rico v. Sanchez Valle*, 136 S. Ct. 1863, 1870 (2016). A defendant in such a case simply committed two offenses through one act. *Id.* (quoting *Heath v. Alabama*, 474 U.S. 82, 88 (1985)). Here, the movants have identified exclusively state-court convictions. The double jeopardy clause therefore has no bearing. The Court will deny the motion.

III. Motion for Exculpatory Materials [241]

Jvon Clements filed a motion asking the Court to "require the prosecutor prior to trial to produce or to provide an opportunity to inspect" various types of exculpatory or mitigating evidence. ECF 241, PgID 1207. Seven other defendants joined in the motion. ECF 245 (Grizzard), 251 (Benson), 253 (Tisdale), 258 (Brown), 263 (Moultrie), 268 (Davis), 292 (Casey). The Government is of course required to provide the materials, even without a motion, pursuant to the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963), and in its response, the Government readily admitted those

[3] Defendants also suggest that pursuing the duplicative allegations is contrary to a Department of Justice policy. *See* ECF 238, PgID 1153–54. The policy is not binding on the Court and confers no particular rights on Defendants.

obligations, ECF 277. The Government also avers that it has, to date, fully complied with the obligations and detailed the materials it already provided. *Id.*

Clements's motion fails to identify any *Brady* materials not yet given to him. Nor do any of the joinders. Rather, the motion is entirely pro forma. In fact, it is, word for word, the same motion Clements's counsel filed in a separate criminal case last year. *Cf. United States v. Rathburn*, Case No. 16-cr-20043, docket entry 59. Having failed to show any entitlement to relief, the motion will be denied.

## IV. Motion for Early Production of Witness Statements [242]

Clements, joined by several other defendants, also moves for an order that would require the Government to produce witness statements early. ECF 242, 244 (Grizzard), 249 (Benson), 250 (Hill), 254 (Tisdale), 259 (Brown), 265 (Moultrie), 269 (Davis), 292 (Casey). Apparently the Government agreed to provide the material "28 days before trial, and witness list 14 days before trial" but Defendants insist that this is an "insufficient amount of time to properly investigate and prepare the defense." ECF 242, PgID 1216. They therefore ask the Court to order the disclosure sooner: 60 days before trial.

Under the Jencks Act, government witnesses' statements are exempt from subpoenas or discovery until the witness has testified on direct examination in the trial of the case. 18 U.S.C. § 3500(a). Once the witness has testified, however, "the court shall, on motion of the defendant, order the United States to produce" the relevant statements. *Id.* § 3500(b).

Defendants concede that the Jencks Act, and the related Federal Rule of Criminal Procedure 16, preclude their request. But they persist on a policy argument, relying principally on law review articles authored by Justice William Brennan. Whatever merit

the arguments may have, they are at odds with the legislative priorities enacted into law, and the law is what binds the Court. The motion will be denied.

## V. Motions to Suppress Physical Evidence [246, 256]

Clements and Tisdale are brothers and co-defendants. They each individually move to suppress physical evidence that was seized in raids on March 12, 2017. ATF agents conducted the raids pursuant to a search warrant backed by an affidavit. Clements and Tisdale both claim the affidavit failed to establish probable cause. Clements further argues that it was so lacking in indicia of reliability that even the good-faith exception does not apply. Tisdale contends that the information was stale.

By March 2017, Justin Henry had been investigating the Playboy Gangster Crips for nearly one year. ECF 246-2, PgID 1258. Henry is a special agent with ATF and has experience investigating drug trafficking and street gangs. He learned from an informant that Tisdale resides at a home on Trinity Street and Clements splits his time between that house and another on Kentfield Street. *Id.* at 1275. Surveilling agents spotted Clements at the Kentfield address more than once, *see id.* at 1277–78, and other sources connected the brothers to the Trinity address in particular, *see id.* at 1278 (LexisNexis address search), 1279 (address used for probation purposes), 1276 (Defendants' Facebook accounts were connected with IP addresses assigned to the home address). The informant also advised Henry that Clements sold marijuana from the Kentfield address. *Id.* at 1277.

Over the course of February 2017, agents surveilled the two houses. Henry and other agents personally observed vehicles regularly coming and going from the homes. In each case, Clements or one of the other defendants would hang around in front of one

of the houses, the vehicle would pull up, and one of the defendants would walk to the car, conduct a conversation, and reach into the window. After that, the cars would depart and frequently head directly to the other house. The surveilling agents also noticed that the same cars were often involved. For instance, a gold Ford Taurus was regularly spotted, and it matched the description of a car used in a recent drive-by shooting. *Id.* at 1277. A black Taurus and a burgundy Camaro were also seen more than once. *Id.* at 1279. This pattern of events led Henry to a singular conclusion: the vehicle walk-ups were narcotics transactions with drugs and money being shuttled between the two houses. His conclusion was bolstered by online research, which revealed that Clements and Tisdale had both previously been arrested with several baggies of marijuana in "close proximity" to the Trinity house. *Id.* at 1281. Consequently, Henry swore that there was probable cause to believe there was evidence of drug trafficking at both the Trinity house and the Kentfield house. *Id.* at 1282.

In sum, there was ample evidence to support a finding of probable cause. Henry did not merely rely on an anonymous tip—he and other agents corroborated it through repeated surveillance. Although the surveilling agents did not observe identical events at the two houses, agents observed what appeared to be drug deals at both. And even so, the vehicles often traveled from one house to the other following the purported transactions, thus supporting a search of both homes. The motions will be denied.

## VI. Motion for Disclosure of Informants' Identities and Agreements [247]

Jvon Clements moved to require the Government to turn over the names and addresses of any informants the Government used in this case, as well as the details of

the agreements those informants may have with the Government. Several co-defendants join in the motion. ECF 260 (Brown), 261 (Grizzard), 266 (Moultrie), 270 (Benson).

There are good reasons to keep the names of informants confidential. If citizens can be assured of their safety and anonymity, they can more freely fulfill their civic obligation to communicate with law enforcement about crimes in their communities. *United States v. Sierra-Villegas*, 774 F.3d 1093, 1098 (6th Cir. 2014) (quoting *Roviaro v. United States*, 353 U.S. 53, 59 (1957)). That is why the Government has the "privilege to withhold from disclosure the identity of persons who furnish information of violations of law[.]" *Roviaro*, 353 U.S. at 59. Still, the privilege is not absolute and it must sometimes give way to the competing interests of the accused in receiving materials that are "relevant and helpful to [his] defense" or are "essential to a fair determination" of his case. *Id.* at 60–61. Courts are to weigh the competing interests, but the accused bears the initial "burden of demonstrating to the court how disclosure of the informant would substantively assist in his defense" and a court must order the disclosure only if the defendant has shown that disclosure is essential to a fair trial. *Sierra-Villegas*, 774 F.3d at 1099 (quoting *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992)) (quotation marks omitted).

Defendants have not made the necessary first showing. They opine that the Government will present its case partially through government informants but fail to go into any further detail. They note general propositions about the Sixth Amendment's Confrontation Clause, but fail to explain why disclosing the identity of a particular informant—let alone all of them—is essential to a fair trial. Accordingly, the Defendants have neither carried their burden nor given the Court the type of detail necessary to weigh the interests. *Cf. United States v. McManus*, 560 F.2d 747, 751 (6th Cir. 1977) (affirming

a disclosure ruling that focused on the informant's role in a drug transaction); *United States v. Eddings*, 478 F.2d 67, 71 (6th Cir. 1973) (evaluating the need for disclosure based on the particular type of information the informant provided). The motion will be denied.

VII. Motion for Early Witness Lists [248]

Jvon Clements moves for the Court to require the Government to provide its witness list early. ECF 248. Defendants Moultrie, Benson, and Casey join in the motion. ECF 267, 271, 292. As with Clements's motion for exculpatory materials, the motion fails to make an argument whatsoever as to why relief is warranted. Instead, Clements and the joining Defendants confess that they are *not* entitled to the relief they move for unless the Court exercises its discretion to grant the relief. ECF 248, PgID 1340. Defendants are correct that the Government has no obligation to provide the witness list early. *See United United States v. Turner*, 91 F. App'x 489, 491 (6th Cir. 2004) (citing *United States v. McCullah*, 745 F.2d 350, 353 (6th Cir. 1984)). And because Defendants have not provided the Court with any reason to make an exception, the Court will deny the motion.

VIII. Motion to Dismiss the Enhancement [252]

The indictment charges each of the Defendants, including Tisdale, with a RICO violation. The section titled "Overt Acts" lists 72 specific actions by the Defendants that support the RICO charges. ECF 160, PgID 421–31. Overt Act 61 specifically concerns Tisdale and states that on or about January 31, 2017, he and co-Defendant Davis tried to shoot someone during a burglary. *Id.* at 429. The indictment also contains a section titled "Notice of Acts with Enhanced Sentencing." *Id.* at 431. Paragraph 11 of the Notice section corresponds to Overt Act 61 and describes the events of January 31 with more

detail. *Id.* at 436–37. Specifically, it accuses Tisdale and Davis of violating Michigan's laws against robbery (Mich. Comp. Laws 750.530), armed robbery (750.529), and assault with the intent to rob and steal while armed (750.89). *Id.*

No one disputes why paragraph 11 exists. A RICO charge, standing alone, carries a maximum sentencing range of 20 years. *See* 18 U.S.C. §§ 1962(d), 1963(a). But the maximum climbs to life if the racketeering activity itself carries a maximum penalty of life. 18 U.S.C. § 1963(a). If the Government intends to pursue a sentence beyond 20 years, it must put the elements of the life-sentence-eligible crime to the jury. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). The Government contends that the "Notice of Acts with Enhanced Sentencing"—including paragraph 11—is the first step in carrying that burden. ECF 286, PgID 1613.

Tisdale moves to dismiss paragraph 11 because he believes there is a mismatch between it and Overt Act 61. He notes that the overt act simply mentions "burglary" without being more specific. Accordingly, he takes the additional step of "assum[ing] that the Government meant to allege that the Defendant committed a home invasion in violation of Michigan law." ECF 252, PgID 1357. Tisdale notes that home invasion does not carry a maximum sentence of life and is therefore not a crime subject to enhancement. *Id.* He concludes that the enhancement is "fatally defective" and should be dismissed. *Id.* at 1354.

The argument fails. To begin, the Government was not required to allege specific, overt acts committed by Tisdale, although it did so. *See United States v. Glecier*, 923

F.2d 496, 500 (7th Cir. 1991); *accord United States v. Dimora*, 829 F. Supp. 2d 574, 586 (N.D. Ohio 2011); *United States v. Norwood*, No. 12-cr-20287, 2013 WL 5965328, at *8 (E.D. Mich. Nov. 8, 2013). Overt Act 61 served its purpose: it put Tisdale on notice that the Government plans to introduce evidence about what happened on January 31, 2017. Paragraph 11 served its purpose, as well: it put Tisdale on notice that, if he is convicted, the Government may seek an enhanced sentence due to the discrete crimes of robbery, armed robbery, and assault with the intent to rob and steal while armed. Overt Act 61 does not track the statutes precisely, but it was not required to. The indictment plainly states that Tisdale joined in a conspiracy that violated 18 U.S.C. § 1962(d), so there is no reason to dismiss a portion of it under Federal Rule of Criminal Procedure 12. The motion will be denied.

## IX. Motion to Dismiss Count Seven [287]

Two of the counts in the indictment relate exclusively to Deshaun Tisdale. Count Six charges him with committing a carjacking on March 19, 2016, in violation of 18 U.S.C. § 2119. ECF 160, PgID 440. Count Seven charges him with using a firearm while committing that same carjacking, in separate violation of 18 U.S.C. § 924(c). *Id.* at 441. Tisdale moves to dismiss Count Seven because he claims that carjacking is not a "crime of violence" as required by § 924(c). He separately argues that the subsection's residual clause is void for vagueness.

Section 924(c) doubles down on particular, existing crimes. Although punishment varies based upon the type of gun used during the crime, and how it was used, in all cases the section criminalizes:

> any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that

> provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm[.]

18 U.S.C. § 924(c)(1)(A). Another subsection defines the term "crime of violence." Specifically, it means a felony that either:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* § 924(c)(3). The first definition (A) is sometimes called the "elements clause" while the second definition (B) is called the "residual clause." Much of the parties' briefing concerns the residual clause, but the matter can be resolved simply by looking at the elements clause.

Carjacking has five elements. "[T]he Government must show that the defendant, (1) with intent to cause death or serious bodily harm, (2) took a motor vehicle, (3) that had been transported, shipped, or received in interstate or foreign commerce, (4) from the person or presence of another (5) by force and violence or intimidation." *United States v. Taylor*, 814 F.3d 340, 373 (6th Cir. 2016), *cert. denied*, 138 S. Ct. 1975 (2018), *reh'g denied*, No. 16-6392, 2018 WL 2767841 (U.S. June 11, 2018) (quotation marks and citation omitted). Tisdale suggests that because carjacking can be done through mere "intimidation" rather than "force and violence," the crime of carjacking does not include the "threatened use of physical force" demanded by the elements clause. Precedent, however, is not on Tisdale's side.

The Government avers that "[e]very court to address this issue has held that the federal carjacking statute is a crime of violence under the elements clause." ECF 302,

PgID 1731 (collecting cases). Tisdale concedes as much. *See* ECF 287, PgID 1622 (admitting that "numerous recent cases" found that the elements clause applies to carjacking, including the Fifth Circuit holding that "[c]arjacking is always and without exception a 'crime of violence' as defined" in § 924(c)(3)). Nevertheless, he invokes a dissent from the Eleventh Circuit in support of his argument. *See id.* at 1623 (citing *In re Smith*, 829 F.3d 1276, 1283 (11th Cir. 2016) (Pryor, J., dissenting)). The dissent opined that it would be "possible" to commit a carjacking through intimidation without threatening to use physical force. *In re Smith*, 829 F.3d at 1283.

To begin, such a hypothetical scenario is not the case here. According to the indictment, on March 19, 2016, Tisdale brandished a gun and, with violence and deadly intent, stole a 2003 Honda Pilot from someone referred to as "A.E." ECF 160, PgID 440–41. More importantly, however, the great weight of authority suggests that "intimidation" as it is used in the elements clause requires the threatened use of violent force. *See United States v. Evans*, 848 F.3d 242, 247 (4th Cir.), *cert. denied*, 137 S. Ct. 2253, 198 L. Ed. 2d 688 (2017). The Court sees no reason to depart from the well-reasoned conclusions of those decisions.

There is no reason to dismiss Count Seven, so the motion will be denied.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that the following motions are **DENIED**: docket entries 234, 238, 241, 242, 246, 247, 248, 252, 253, 254, 255, 256, and 287.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: August 7, 2018

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 7, 2018, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager